(98 App. Div. 182)

## DEMPSEY v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department.   November 18, 1904.)

1. STREET RAILROADS—PERSONS ON TRACK—CHILDREN—DEATH—NEGLIGENCE.
    In an action against a street railway company for the killing of a child, evidence reviewed, and *held* to require submission of the question of defendant's negligence to the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE.
    A child nine years and three months of age, killed while crossing a street railway track by being struck by a car, is only required to use such care for his own safety as is usual in children of his age when playing in the streets under similar circumstances.

3. SAME—NON SUI JURIS.
    In an action for the death of a child nine years and three months of age, while playing in the street, by being struck by a street car, plaintiff is entitled to the presumption that the child was non sui juris.
    Jenks, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Joseph Dempsey, as administrator of Joseph Dempsey, Jr., deceased, against the Brooklyn Heights Railroad Company. From a judgment dismissing plaintiff's complaint at the close of all the evidence, plaintiff appeals. Reversed.

Argued before HIRSCHBERG, P. J. and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Robert Stewart, for appellant.
I. R. Oeland, for respondent.

HIRSCHBERG, P. J.   The plaintiff was nonsuited on the close of the evidence in an action to recover damages for the death of his intestate, a child nine years and three months old, who was overtaken and killed by one of the defendant's trolley cars on Graham avenue, in Brooklyn, between 6 and 7 o'clock in the afternoon of October 31, 1901.   It was Halloween, and the plaintiff's intestate, with other childish companions, was playing the usual pranks indulged in by children on the recurrence of that occasion; striking and chasing one another with stockings or bags filled with flour. The general trend of Graham avenue at the place of the occurrence is northerly and southerly, and the accident occurred on the car track going south on the westerly side of the avenue, about midway between Engert avenue, on the north, and Newton street, on the south.   Because of some playful altercation, the deceased, with two other lads, started to run southerly on the track; the deceased being in advance, and being chased by the others.   The deceased reached the track somewhat in advance of the car—the distance being disputed—and ran swiftly until he was overtaken.   There was a truck and team 18 feet long standing by the curb, and wide enough to reach within a foot or two of the nearest rail, and the deceased had run about its length before he was caught and killed by the car.   That there was evidence which, if accepted by the

¶ 2. See Street Railroads, vol. 44, Cent. Dig. § 217.

jury, would establish this fact, is undisputable; the learned counsel for the respondent conceding it in his brief, as follows:

"The deceased reached the track, and the testimony of some of his witnesses is to the effect that he ran down the track in front of the car almost the whole length of the track before he was struck and killed."

At the time the chase upon the track began, the second boy, named Graff, was behind of, or northerly from, the deceased, at a distance from him which the parties stipulated on the trial was about 10 feet; and the third boy was behind of, or northerly from, Graff, but not upon the track. The horses were headed to the north. The car came from the north, and its swift approach prevented the third boy from getting on the track at all. The car proceeded rapidly, and, without signal or warning, overtook and knocked Graff down, but fortunately without hurting him, and continued on, without signal, warning, or lessening of speed, until it reached and struck the deceased, at about the rear of the truck. At the moment just preceding the collision the deceased was apparently for the first time conscious of the nearness of the car, and of the fact that its speed was not to be reduced, and, admonished by the shout of the motorman or in some other manner of the danger he was in, tried to get off the track on the left or easterly side, and so nearly succeeded that, as the motorman testified, "about an eighth of an inch had he been further to my left, his life would have been saved." As it was, he was struck by the fender on his upraised foot, his body was twisted around to the left, his neck falling upon the rail, and the wheel decapitating him. No ground was assigned on the motion to nonsuit, but the plaintiff asked to be "allowed to go to the jury on all the facts in the case, and especially on the question of the negligence of the defendant and contributory negligence of plaintiff," which motion was denied and an exception taken.

It cannot be seriously urged that the defendant was free from negligence, as a matter of law. It was clearly a question of fact for the consideration of the jury whether or not there was carelessness exhibited in the operation of the car. In determining this and all other questions presented on the appeal, the settled rule requires us to accept only the inferences deducible from the evidence which are most favorable to the plaintiff, and to treat all contested facts as though established in his favor. Higgins v. Eagleton, 155 N. Y. 466, 471, 50 N. E. 287. While there is a difference of opinion among the witnesses as to the precise distance of the deceased in front of the car when he commenced running upon the track, the motorman himself testified that it was 10 or 12 feet; and this, with the length of the team and truck, would make a space of from 28 to 30 feet before he was finally caught. The distance was probably greater, as, indeed, may be inferred from the evidence of some of the witnesses, and as the presence of the boy Graff between the deceased and the car—10 feet apart—would tend to indicate. But the motorman testified that he could and did stop the car in 6 feet of space, and the inference is clearly permissible to a jury that it was careless to continue the speed without any at-

tempt to stop until the actual moment of the fatality. It certainly cannot be said, as matter of law, that no carelessness is involved in running a car past one child, knocked down on the way, and then after another to his death, when the car could have been easily stopped, and the merest fraction of an inch of leeway would have averted the final disaster. This would be true, even adopting the estimate of a passenger on the car who places the deceased only 4 feet ahead of the car when he first started running upon the track, although it is quite evident that he is referring to a time immediately after the Graff boy had been hit. This witness graphically describes the occurrence as follows:

"He [the deceased] would be just about four feet ahead of the car, I should judge, and he ran about four feet ahead of the car the whole distance from the head of the horses down to the tail of the wagon. The car was going faster than he was for it ketched him—it ketched up to him. It had to gain four feet. So that the boy was running just about as fast as the car was going, according to my story—going a little bit faster, or else it wouldn't have caught up to him. The boy was going just a little bit slower than the car; that is to say, he was running as hard as he could. * * * The motorman made no effort to stop the car after the boy got on the track until he was near the end of that truck. He did not make any effort until he had hit the boy. Right at the end of the truck."

There is no claim but that the child was in sight of the motorman all the time, and, reducing the distance of the chase to 22 feet, as this witness does, it certainly cannot be said, as matter of law, that a failure to attempt to stop a car which was thus obviously running down a fleeing child, and which car could be stopped in a space of 6 feet, was the exercise of all the care which the situation enjoined.

On the question of contributory negligence, it may be said that, if the deceased was to have been expected to exercise care, it would only be the care usual in children of his age when playing in the streets, even assuming that the absence of such care really contributed to, or was the proximate cause of, the accident, in a legal sense. See Costello v. Third Avenue Railroad Co., 161 N. Y. 317, 55 N. E. 897. There are many authorities which support the theory that the question of such contributory negligence, under the circumstances of this case, would be for the jury to determine as a fact. But it is well settled that the question whether negligence may be imputed at all to a child as young as the deceased is one of fact, and not of law, and it was therefore error in the learned trial court to solve it. It is true that the question at what age an infant's responsibility for negligence may be presumed to commence is not one of fact, but one of law, as was held in Tucker v. N. Y. C. & H. R. R. Co., 124 N. Y. 308, 26 N. E. 916, in which case it was also suggested that 12 years was the age at which the presumption of capacity to appreciate danger and to exercise caution should commence. In the subsequent case of Zwack v. N. Y., L. E. & W. R. Co., 160 N. Y. 362, 54 N. E. 785, it was expressly held that the question whether an infant under the age of 12 years is sui juris depends upon its capacity and intelligence, and hence is a question for the consideration of the jury, in connection with

all the facts and circumstances of the case. The rule laid down in these cases was followed by this court in Hill v. Baltimore & New York R. Co., 75 App. Div. 325, 78 N. Y. Supp. 134, where a reversal was ordered because the trial court ruled, as matter of law, that a plaintiff 11 years 9 months and 7 days old was sui juris. The plaintiff herein was therefore entitled to the benefit of the presumption that the deceased was non sui juris, and, while it may be said that there was evidence sufficient to overcome that presumption, it was clearly not within the province of the court to determine whether or not it was overcome, but the question should have been submitted· to the jury. The case was not tried on the theory that the deceased was sui juris; there is no hint of any admission on the part of the plaintiff to that effect; and the question is sufficiently raised by the plaintiff's request to go to the jury on all the facts, and by the exceptions to the denial of that motion and to the granting of the nonsuit.

The judgment should be reversed. All concur, except JENKS, J., who dissents.